NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY HOSPITALITY, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 11-4720 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Ravi Kurumety's Motion to Stay the Court's February 13, 2018 Order Pending Appeal pursuant to Federal Rule of Civil Procedure 62. (ECF No. 31). Plaintiff Poser Investments, Inc. has filed opposition, (ECF No. 38), to which Defendant has not replied. The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated herein, Defendant's Motion is hereby granted.

## I. BACKGROUND

The history of this case has been set forth in the Court's February 13, 2018 Order, (ECF No. 30), and therefore the Court will only address those facts pertinent to the current motion. On February 6, 2012, default judgment in the amount of $377,425.05 was entered against Defendant for breaching a licensing agreement with Howard Johnson International, Inc. (ECF No. 8). Howard Johnson International, Inc. subsequently assigned its judgment to Plaintiff, who requested that five writs of execution be issued against Defendant's personal property. (ECF Nos. 9, 10).

Pursuant to the writs of execution, the United States Marshals Service levied on $278,207.00 held in Defendant's Fidelity Investments Rollover Individual Retirement Account ("IRA"). (ECF No. 11-2 ¶ 3). On September 29, 2017, Plaintiff moved before this Court for an order turning over the levied funds to Plaintiff. (ECF No. 11). Defendant did not oppose Plaintiff's motion and an amended version of the motion was granted by the Court on November 6, 2017. (ECF No. 14). Thereafter, on November 27, 2017, Defendant filed a motion objecting to the turnover of funds and to dismiss the writ of execution. (ECF No. 22). In his motion, Defendant argued that the funds held in the IRA originated from a 401(k) Employee Retirement Income Security Act ("ERISA") plan, which exempted the funds from execution. (ECF No. 22-1 ¶¶ 7–8). At the Court's request, Defendant clarified that his motion was based on ERISA Section 2016(d)(1) ("the anti-alienation provision"). (ECF No. 29). Defendant argued that the anti-alienation provision barred the alienation of ERISA funds even after they are distributed. (*Id.*).

The Court disagreed with Defendant and issued an order denying his motion objecting to the turnover of funds on February 13, 2018 ("February 13, 2018 Order"). (ECF No. 30). In its February 13, 2018 Order, the Court relied on Third Circuit precedent for the proposition that "the anti-alienation provision does not apply to pension funds that have been distributed to the beneficiary." (*Id.* ¶ 6). Because the $278,207.00 was distributed from the 401(k) ERISA plan to the IRA, the Court found that the funds were in Defendant's possession and not exempt under the anti-alienation provision. (*Id.* ¶¶ 6–7). Accordingly, the Court ordered the parties to proceed in accordance with its November 6, 2017 Order authorizing the turnover of Defendant's IRA funds to Plaintiff. (*Id.*). On February 26, 2018, Defendant filed a Notice of Appeal with the Third Circuit Court of Appeals seeking review of this Court's February 13, 2018 Order. (ECF No. 32). The primary issue on appeal is whether an IRA that contains funds from a 401(k) ERISA retirement

plan is exempt from creditors. (ECF No. 31-2 ¶ 15). The same day that Defendant filed its appeal, Defendant also submitted the current motion, requesting that the IRA funds remain frozen pursuant to the writ of execution pending the resolution of his appeal. (ECF No. 31).

## II. LEGAL STANDARD

A stay is "an exercise of judicial discretion" and "[t]he propriety of its issues is dependent on the circumstances of the particular case." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926). The four factors to consider are: (1) whether the moving party has made a strong showing that he is likely to succeed on the merits; (2) whether the moving party will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the non-moving party; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Courts balance these four factors and consider the relative strength of each one. *In re Revel AC, Inc., et al.*, 802 F.3d 558, 568 (3d Cir. 2015) (citations omitted). As the party requesting the stay, Defendant bears the burden. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

## III. ANALYSIS

Upon balancing all four factors, the Court finds that a stay of the February 13, 2018 Order pending appeal is appropriate. The Court will address each factor in turn.

1. Likelihood of Success

A moving party meets the standard for a likelihood of success on the merits when he or she shows "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). It is not enough that the probability of success be "better than negligible," but that does not mean that the likelihood of success needs to be "more likely than not." *In re Revel AC, Inc.*, 802 F.3d at 569 (first quoting *Nken*, 556 U.S. at 434; then

quoting *Singer Mgmt. Consultants, Inc.*, 650 F.3d at 229). Because the Third Circuit applies a "sliding-scale" approach when analyzing a motion to stay, a lesser showing of success on the merits can be compensated by a stronger showing of the other stay factors. *Id.* Put differently, "in a situation where factors of irreparable harm, interests of third parties and public considerations strongly favor the moving party, an injunction might be appropriate even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required." *Id.* at 569–70 (quoting *Constr. Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978)).

Here, the Court finds that Defendant has not satisfied his burden of proving a likelihood of success on the merits. Defendant's main argument for the likelihood of success of his appeal is that the IRA funds are exempt from creditors under ERISA. (ECF No. 31-2 ¶ 17). This is the same argument that Defendant raised in his motion objecting to the turnover of funds. (*See* ECF No. 22-1 ¶¶ 7–8). As the Court has already stated in its February 13, 2018 Order, Defendant's funds were distributed into the IRA and are therefore no longer exempt from garnishment under ERISA's anti-alienation clause. (ECF No. 30 ¶¶ 6–7). Defendant fails to raise any relevant arguments that counter the Court's original conclusion.[1] For example, Defendant does not even attempt to address the Third Circuit decision cited by the Court, which stated that "the anti-alienation provision does not apply to pension funds that have been distributed to the beneficiary." (*Id.* ¶ 6). In the absence of any evidence to the contrary, the Court finds that Defendant's appeal does not have a likelihood of success on the merits.

---

[1] Defendant does attempt to distinguish the facts of a New Jersey state law case, *Halliburton Co. v. Mor*, 231 N.J. Super. 197, 200 (Law Div. 1988), that the Court cited in its February 13, 2018 Order. (ECF No. 31-2 ¶ 16). Defendant argues that this case is different because, here, he never received receipt of the funds before they were transferred to the IRA. (*Id.*). However, the Court cited to *Halliburton Co.* for its analysis that IRA funds are available to the depositors as an individual, unlike a 401(k) ERISA plan. (ECF No. 30 ¶ 6). Defendant fails to address this analysis.

4

Nevertheless, the Court will analyze whether the presence of the other stay factors in this case outweigh Defendant's insufficient showing of the first factor. The Court agrees with the determination of other courts in the Third Circuit that it would be "illogical . . . to require that the court in effect conclude that its original decision in the matter was wrong before a stay can be issued." *Evans v. Buchanan*, 435 F. Supp. 832, 844 (D. Del. 1977). Such a requirement would lead to consistent denials of stay motions despite the threat of irreparable injury that may be suffered by the moving party. *Id.* at 843. Therefore, the Court will continue analyzing the other stay factors, which is appropriate under the Third Circuit's "sliding-scale" approach. *See In re Revel AC, Inc.*, 802 F.3d at 569. As set forth below, the other stay factors strongly favor Defendant, which outweighs the absence of a likelihood of success on the merits.

2. Irreparable Injury to Movant

For the second factor, "the applicant must 'demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay].'" *In re Revel AC, Inc.*, 802 F.3d at 569 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The Third Circuit has found it reasonably necessary to protect ERISA funds pending a potential future judgment in order to uphold the status quo and ensure that the funds will be transferred. *See Gerardi v. Pellulo*, 16 F.3d 1363, 1373–74 (3d Cir. 1994) (citing *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 196 (3d Cir. 1990)).

Here, it is clear to the Court that irreparable injury will result absent a stay because Defendant would lose the $278,207.00 in the IRA, which the Third Circuit may later deem as exempt under ERISA's anti-assignment clause. If Defendant succeeds on appeal but a stay did not issue, the funds will have already been distributed and dispersed by the time Defendant receives his decision from the Third Circuit. This would make it harder to reverse the impact of the Court's

5

February 13, 2018 Order and would open the door to further litigation, time, and costs, all which can be easily avoided if a stay is granted. Therefore, Defendant has shown that he will suffer irreparable injury if the status quo is not maintained.

   3. Substantial Injury to Other Party

For the third factor, the Court must consider the substantial injury endured by the non-moving party if the stay is granted, and then must weigh that injury against the likely harm to the movant. *In re Revel AC, Inc.*, 802 F.3d at 569. If a stay is granted, the primary injury imposed on Plaintiff would be the continued delay in receiving the money it is owed. Though Plaintiff certainly has an important interest in receiving its judgment, the relatively limited delay caused by the pending appeal will not create a substantial harm. *See In re Cujas*, 376 B.R. 480, 489–90 (E.D. Pa. 2007) (concluding same). Maintaining the status quo will not otherwise prejudice or harm Plaintiff, because the funds will remain frozen and outside the possession of Defendant. Based on these considerations, the relatively limited harm to Plaintiff in delaying the turnover of funds is outweighed by the hurdles that Defendant would have to overcome if the stay is not granted and the February 13, 2018 Order is overturned on appeal. Therefore, the Court concludes that Plaintiff will not suffer substantial injury if the stay is granted.

   4. Public Interest

The final factor requires the Court to take into account the public interest implicated by granting or denying the motion to stay. *In re Revel AC, Inc.*, 802 F.3d at 569. This includes considering "how a stay decision has consequences beyond the immediate parties." *Id.* (citation omitted). Defendant is correct that there is an interest in maintaining the status quo while an appeal is pending, (ECF No. 31-2 ¶ 14), which is served by keeping the IRA funds frozen as they have been since at least September of 2017, (ECF No. 11-2 ¶ 3). There is also a public interest in

protecting ERISA plan beneficiaries by preserving the assets of an ERISA benefits plan. *See Gerardi*, 16 F.3d at 1374. This interest would be upheld by granting the stay, because the Third Circuit may find that the IRA funds still qualify as part of the ERISA benefits plan. Finally, it would be judicially efficient to grant Defendant's motion, as it would be much easier for both parties, and for the Court's administration, to keep the money frozen in its current readily accessible location than to require Plaintiff to return the funds if the February 13, 2018 Order is overturned on appeal.

Though Plaintiff is correct that creditors have an interest in receiving the money they are owed, (ECF No. 38 at 6), the Court has already explained above that the interest of a creditor would not be significantly disturbed by requiring Plaintiff to wait until the appeal is resolved. Therefore, the public interests in this case weigh in favor of granting Defendant's motion. Based on the above findings, the Court concludes that a stay of the February 13, 2018 Order pending appeal is appropriate.

5. Bond

Pursuant to Federal Rule of Civil Procedure 62(d), a stay pending appeal may include a bond or other terms that secure the rights of the opposing party. The Court agrees with Defendant that a bond or any other terms are not necessary in this case, because the money is already frozen pursuant to a writ of execution. (ECF No. 31-2 ¶ 23). Plaintiff argues that a bond should be issued for the full judgment of $377,425.05 to ensure that it receives a full recovery. (ECF No. 38 at 7). Though Plaintiff is certainly entitled to the full judgment, the Court's current analysis only pertains to the IRA funds, because the original November 6, 2017 Order to turnover the IRA funds, the February 13, 2018 Order, the pending appeal, and the present motion are all specifically focused on the IRA, not the entire judgment. (ECF Nos. 14, 30, 31). Therefore, the Court finds that a bond

is unnecessary, considering the relevant IRA funds will not be in the possession of either party pending appeal.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby grants Defendant's Motion to Stay the February 13, 2018 Order pending appeal. An appropriate Order follows this Opinion.

Dated: May 7, 2018

**JOSE L. LINARES**
Chief Judge, United States District Court